16 U.S. 260 (____)
3 Wheat. 260
CRAIG
v.
LESLIE et al.
Supreme Court of United States.

*261 February 20th. Nicholas (Attorney-General of Virginia).
Wickham, contrà.
*265 March 11th, 1818. WASHINGTON, Justice, delivered the opinion of the court.
The incapacity of an alien to take, and to hold beneficially, a legal *266 or equitable estate in real property, is not disputed by the counsel for the *577] plaintiff; and it is admitted by the counsel for the state of *Virginia, that this incapacity does not extend to personal estate. The only inquiry, then, which this court has to make is, whether the above clause in the will of Robert Craig is to be construed, under all the circumstances of this case, as a bequest to Thomas Craig of personal property, or as a devise of the land itself?
Were this a new question, it would seem extremely difficult to raise a doubt respecting it. The common sense of mankind would determine, that a devise of money, the proceeds of land directed to be sold, is a devise of money, notwithstanding it is to arise out of land; and that a devise of land, which a testator by his will directs to be purchased, will pass an interest in the land itself, without regard to the character of the fund out of which the purchase is to be made. The settled doctrine of the courts of equity correspond with this obvious construction of wills, as well as of other instruments, whereby land is directed to be turned into money, or money into land, for the benefit of those for whose use the conversion is intended to be made. In the case of Fletcher v. Ashburner (1 Bro. C.C. 497), the Master of the Rolls says, that "nothing is better established than this principle, that money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this, in whatever manner the direction is given." He adds, "the owner of the fund, or the contracting *578] parties, may make land money, or money *land. The cases establish this rule universally." This declaration is well warranted by the cases to which the Master of the Rolls refers, as well as by many others. (See Doughty v. Bull, 2 P. Wms. 320; Yeates v. Compton, Ibid. 358; Trelawney v. Booth, 2 Atk. 307.)
The principle upon which the whole of this doctrine is founded is, that a court of equity, regarding the substance, and not the mere forms and circumstances of agreements and other instruments, considered things directed or agreed to be done, as having been actually performed, where nothing has intervened which ought to prevent a performance. This qualification of the more concise and general rule, that equity considers that to be done which is agreed to be done, will comprehend the cases which come under this head of equity. Thus, where the whole beneficial interest in the money, in the one case, or in the land, in the other, belongs to the person for whose use it is given, a court of equity will not compel the trustee to execute the trust, against the wishes of the cestui que trust, but will permit him to take the money, on the land, if he elect to do so, before the conversion has actually been made; and this election he may make, as well by acts or declarations, clearly indicating a determination to that effect, as by application to a court of equity. It is this election, and not the mere right to make it, which changes the character of the estate, so as to make it real or personal, at the will of the party entitled to the beneficial interest.
*579] *If this election be not made, in time to stamp the property with a character different from that which the will or other instrument gives it, the latter accompanies it, with all its legal consequences, into the hands of those entitled to it in that character. So that, in case of the death of the cestui que trust, without having determined his election, the property *267 will pass to his heirs or personal representatives, in the same manner as it would have done, had the trust been executed, and the conversion actually made in his lifetime.
In the case of Kirkman v. Mills (13 Ves. 338), which was a devise of real estate to trustees, upon trust to sell, and the moneys arising, as well as the rents and profits till the sale, to be equally divided between the testator's three daughters, A., B. and C.; the estate was, upon the death of A., B. and C., considered and treated as personal property, notwithstanding the cestuis que trust, after the death of the testator, had entered upon, and occupied the land, for about two years prior to their deaths; but no steps had been taken by them, or by the trustees, to sell, nor had any requisition to that effect been made by the former to the latter. The Master of the Rolls was of opinion, that the occupation of the land for two years was too short to presume an election. He adds, "the opinion of Lord ROSSLYN, that property was to be taken as it happened to be at the death of the party from whom the representative claims, had been much doubted by Lord ELDON, who held, that without some act, it must be considered as being in the state in *which it ought to be; and the Lord ROSSLYN'S rule was new, and [*580 not according to the prior cases.
The same doctrine is laid down and maintained in the case of Edwards v. The Countess of Warwick (2 P. Wms. 171), which was a covenant, on marriage, to invest 10,000l., part of the lady's fortune, in the purchase of land in fee, to be settled on the husband for life, remainder to his first and every other son in tail-male, remainder to the husband in fee. The only son of this marriage having died without issue, and intestate, and the investment of the money not having been made during his life, the Chancellor decided, that the money passed to the heir-at-law; that it was in the election of the son to have made this money, or to have disposed of it as such, and that, therefore, even his parol disposition of it would have been regarded; but that something to determine the election must be done.
This doctrine, so well established by the cases which have been referred to, and by many others which it is unnecessary to mention, seems to be conclusive upon the question which this court is ealled upon to decide, and would render any further investigation of it useless, were it not for the case of Roper v. Radcliffe, which was cited, and mainly relied upon, by the counsel for the state of Virginia. The short statement of that case is as follows: John Roper conveyed all his lands to trustees and their heirs, in trust, to sell the same, and out of the proceeds, and of the rents and profits till sale, to pay certain debts, and the overplus of the money to be paid as he, the said John Roper, by his will or otherwise *should appoint, and for [*581 want of such appointment, for the benefit of the said John Roper and his heirs. By his will, reciting the said deed, and the power reserved to him in the surplus of the said real estate, he bequeathed several pecuniary legacies, and then gave the residue of his real and personal estate to William Constable and Thomas Radcliffe, and two others, and to their heirs. By a codicil to this will, he bequeathed other pecuniary legacies; and the remainder, whether in lands or personal estate, he gave to the said W.C. and T.R. Upon a bill filed by W.C. and T.R. against the heir-at-law of John Roper, and the other trustees, praying to have the trust executed, and the residue of the money arising from the sale of the lands to be paid over to *268 them; the heir-at-law opposed the execution of the trust, and claimed the land as a resulting trust, upon the ground of the incapacity of Constable and Radcliffe to take, they being papists. The decree of the court of chancery, which was in favor of the papists, was, upon appeal to the house of lords, reversed, and the title of the heir-at-law sustained; six judges against five being in his favor.
Without stating at large the opinion upon which the reversal took place, this court will proceed, 1st. To examine the general principles laid down in that opinion; and then, 2d. The case itself, so far as it has been pressed upon us as an authority to rule the question before the court. In performing the first part of this undertaking, it will not be necessary to question any one *582] of the premises laid down in that opinion. They are, *1. That land devised to trustees, to sell for payment of debts and legacies, is to be deemed as money. This is the general doctrine established by all the cases referred to in the preceding part of this opinion. 2. That the heir-at-law has a resulting trust in such land, so far as it is of value, after the debts and legacies are paid, and that he may come into equity and restrain the trustee from selling more than is necessary to pay the debt and legacies; or he may offer to pay them himself, and pray to have a conveyance of the part of the land not sold, in the first case, and the whole, in the latter, which property will, in either case, be land, and not money. This right to call for a conveyance is very correctly styled a privilege, and it is one which a court of equity will never refuse, unless there are strong reasons for refusing it. The whole of this doctrine proceeds upon a principle which is incontrovertible, that where the testator merely directs the real estate to be converted into money, for the purposes directed in his will, so much of the estate, or the money arising from it, as is not effectually disposed of by the will (whether it arise from some omission or defect in the will itself, or from any subsequent accident, which prevents the devise from taking effect), results to the heir-at-law, as the old use not disposed of.[1] Such was the case of Crewe v. Bailey (3 P. Wms. 20), where the testator having two sons, A. and B., and three daughters, devised his lands to be sold to pay his debts, &c., and as to the moneys arising by the sale, after debts paid, gave 200l. to A. the eldest son, at the age of 21, and the residue to his four younger children. *583] A. died before *the age of 21, in consequence of which, the bequest to him failed to take effect. The court decided, that the 200l. should be considered as land, to descend to the heir-at-law of the testator, because it was, in effect, the same as if so much land as was of the value of 200l. was not directed to be sold, but was suffered to descend. The case of Ackroyd v. Smithson (1 Bro. C.C. 503) is one of the same kind, and establishes the same principle. So, likewise, a money provision, under a marriage contract, to arise out of land, which did not take effect, on account of the death of the party for whose benefit it was intended, before the time prescribed, resulted as money to the grantor, so as to pass under a residuary clause in his will. (Hewitt v. Wright, 1 Bro. C.C. 86.)
But even in cases of resulting trusts, for the benefit of the heir-at-law, it is settled, that if the intent of the testator appears to have been, to stamp upon the proceeds of the land described to be sold, the quality of *269 personalty, not only to subserve the particular purposes of the will, but to all intents, the claim of the heir-at-law to a resulting trust is defeated, and the estate is considered to be personal. This was decided in the case of Yeates v. Compton (2 P. Wms. 308), in which the Chancellor says, that the intention of the will was to give away all from the heir, and to turn the land into personal estate, and that this was to be taken as it was at the testator's death, and ought not to be altered by any subsequent accident, and decreed the heir to join in the sale of the land, and the money arising therefrom to be *paid over as personal estate to the representatives of the [*584 annuitant, and to those of the residuary legatee. In the case of Fletcher v. Ashburner, before referred to, the suit was brought by the heir-at-law of the testator, against the personal representatives and the trustees claiming the estate, upon the ground of a resulting trust. But the court decreed the property, as money, to the personal representatives of him to whom the beneficial interest in the money was bequeathed, and the Master of the Rolls observes, that the cases of Emblyn v. Freeman, and Crewe v. Bailey, are those where real estate being directed to be sold, some part of the disposition has failed, and the thing devised has not accrued to the representative or devisee, by which something has resulted to the heir-at-law.
It is evident, therefore, from a view of the above cases, that the title of the heir to a resulting trust can never arise, except when something is left undisposed of, either by some defect in the will, or by some subsequent lapse, which prevents the devise from taking effect; and not even then, if it appears, that the intention of the testator was, to change the nature of the estate from land to money, absolutely and entirely, and not merely to serve the purposes of the will. But the ground upon which the title of the heir rests is, that whatever is not disposed of remains to him, and partakes of the old use, as if it had not been directed to be sold.
The third proposition laid down in the case of Roper v. Radcliffe is, that equity will extend the same privilege to the residuary legatee, which is allowed *to the heir, to pay the debts and legacies, and call for a conveyance [*585 of the real estate, or to restrain the trustees from selling more than is necessary to pay the debts and legacies. This has, in effect, been admitted in the preceding part of this opinion; because, if the cestui que trust of the whole beneficial interest in the money to arise from the sale of the land, may claim this privilege, it follows, necessarily, that the residuary legatee may, because he is, in effect, the beneficial owner of the whole, charged with the debts and legacies, from which he will be permitted to discharge it, by paying the debts and legacies, or may claim so much of the real estate as may not be necessary for that purpose.
But the court cannot accede to the conclusion, which, in Roper v. Radcliffe, is deduced from the establishment of the above principles. That conclusion is, that in respect to the residuary legatee, such a devise shall be deemed as land in equity, though in respect to the creditors and specific legatees, it is deemed as money. It is admitted, with this qualification, that, if the residuary legatee thinks proper to avail himself of the privilege of taking it as land, by making an election in his lifetime, the property will then assume the character of land. But if he does not make this election, the property retains its character of personalty, to every intent and purpose. The cases before cited seem to the court to be conclusive upon this point; *270 and none were referred to, or have come under the view of the court, which *586] *sanction the conclusion made, in the unqualified terms used in the case of Roper v. Radcliffe.
As to the idea that the character of the estate is affected by this right of election, whether the right be claimed or not, it appears to be as repugnant to reason, as we think it has been shown to be, to principle and authorities. Before anything can be made of the proposition, it should be shown, that this right or privilege of election is so indissolubly united with the devise, as to constitute a part of it, and that it may be exercised in all cases, and under all circumstances. This was, indeed, contended for, with great ingenuity and ability, by the counsel for the state of Virginia, but it was not proved to the satisfaction of the court. It certainly is not true, that equity will extend this privilege in all cases to the cestui que trust. It will be refused, if he be an infant. In the case of Seeley v. Jago (1 P. Wms. 389), where money was devised, to be laid out in land in fee, to be settled on A., B. and C., and their heirs, equally to be divided: on the death of A., his infant heir, together with B. and C., filed their bill claiming to have the money, which was decreed accordingly as to B. and C.; but the share of the infant was ordered to be put out for his benefit, and the reason assigned was, that he was incapable of making an election, and that such election, if permitted, would, in case of his death, be prejudicial to his heir.
In the case of Foone v. Blount (Cowp. 467), Lord MANSFIELD, who is compelled to acknowledge the authority of Roper v. Radcliffe in parallel *587] cases, *combats the reasoning of Chief Justice PARKER upon this doctrine of election, with irresistible force. He suggests, as the true answer to it, that though in a variety of cases, this right exists, yet it was inapplicable to the case of a person who was disabled by law from taking land, and that, therefore, a court of equity would, in such a case, decree that he should take the property as money.
The case of Walker v. Denne (2 Ves. jr. 170) seems to apply with great force to this part of our subject. The testator directed money to be laid out in lands, tenements and hereditaments, or on long terms, with limitations applicable to real estate. The money not having been laid out, the crown, on failure of heirs, claimed the money as land. It was decided, that the crown had no equity against the next of kin, to have the money laid out in real estate, in order to claim it by escheat. It was added, that the devisees, on becoming absolutely entitled, have the option given by the will; and a deed of appointment by one of the cestuis que trust, though a feme covert, was held a sufficient indication of her intention, that it should continue personal, against her heir, claiming it as ineffectually disposed of, for want of her examination. This case is peculiarly strong, from the circumstance, that the election is embodied in the devise itself; but this was not enough, because the crown had no equity to force an election to be made, for the purpose of producing an escheat.
Equity would surely proceed contrary to its regular course, and the principles which universally govern it, to allow the right of election, where *588] it is desired, *and can be lawfully made, and yet refuse to decree the money, upon the application of the alien, upon no other reason, but because, by law, he is incapable to hold the land: in short, to consider him in the same situation as if he had made an election, which would have *271 been refused, had he asked for a conveyance. The more just and correct rule would seem to be, that where the cestui que trust is incapable to take or to hold the land beneficially, the right of election does not exist, and consequently, that the property is to be considered as being of that species into which it is directed to be converted.
Having made these observations upon the principles laid down in the case of Roper v. Radcliffe, and upon the arguments urged at the bar in support of them, very few words will suffice to show, that as an authority, it is inapplicable to this case. The incapacities of a papist, under the English statute of 11 & 12 Wm. III., c. 4, and of an alien at common law, are extremely dissimilar. The former is incapable to take by purchase, any lands or profits out of lands; and all estates, terms and any other interests or profits whatsoever out of lands, to be made, suffered or done, to or for the use of such person, or upon any trust for him, or to or for the benefit or relief of any such person, are declared by the statute to be utterly void. Thus, it appears, that he cannot even take. His incapacity is not confined to land, but to any profit, interest, benefit or relief, in or out of it. He is not only disabled from taking or having the benefit of any *such interest, but [*589 the will or deed itself, which attempts to pass it, is void. In Roper v. Radcliffe, it was strongly insisted, that the money given to the papist, which was to be the proceeds of the land, was a profit or interest out of the land. If this be so (and it is not material in this case to affirm or deny that position), then the will of John Roper in relation to the bequest to the two papists, was void under the statute; and if so, the right of the heir-at-law of the testator, to the residue, as a resulting trust, was incontestible. The cases above cited have fully established that principle. In that case, too, the rents and profits, till the sale, would have belonged to the papists, if they were capable of taking, which brought the case still more strongly within the statute; and this was much relied on, not only in reasoning upon the words, but the policy of the statute.
Now, what is the situation of an alien? He can not only take an interest in land, but a freehold interest in the land itself, and may hold it against all the world but the king, and even against him, until office found, and he is not accountable for the rents and profits previously received.[(a)] In this case, the will being valid, and the alien capable of taking under it, there can be no resulting trust to the heir, and the claim of the state is founded solely upon a supposed equity, to have the land by escheat, as if the alien had, or could, upon the principles of a court of equity, *have elected to take [*590 the land instead of the money. The points of difference between the two cases are so striking, that it would be a waste of time to notice them in detail.
It may be further observed, that the case of Roper v. Radcliffe has never, in England, been applied to the case of aliens; that its authority has been submitted to with reluctance, and is strictly confined in its application to cases precisely parallel to it. Lord MANSFIELD, in the case of Foone v. Blount, speaks of it with marked disapprobation; and we know, that had Lord TREVOR been present, and declared the opinion he had before entertained, the judges would have been equally divided.
*272 The case of the Attorney-General and Lord Weymouth (Ambler 20) was also pressed upon the court, as strongly supporting that of Roper v. Radcliffe, and as bearing upon the present case. The first of these propositions might be admitted; although it is certain, that the mortmain act, upon which that case was decided, is even stronger in its expression than the statute against papists, and the Chancellor so considers it; for, he says, whether the surplus be considered as money or land, it is just the same thing, the statute making void all charges and incumbrances on land, for the benefit of a charity. But if this case were, in all respects, the same as Roper v. Radcliffe, the observations which have been made upon the latter would all apply to it. It may be remarked, however, that in this case, the Chancellor avoids expressing any opinion upon the question, whether the *591] money to arise from the sale of *the land, was to be taken as personalty or land; and, although he mentions the case of Roper v. Radcliffe, he adds, that he does not depend upon it, as it was immaterial, whether the surplus was to be considered as land or money, under the mortmain act.
Upon the whole, we are unanimonsly of opinion, that the legacy given to Thomas Craig, in the will of Robert Craig, is to be considered as a bequest of personal estate, which he is capable of taking for his own benefit.
Certificate accordingly.
NOTES
[1] Wilson v. Hamilton, 9 S. & R. 424; Wood v. Cone, 1 Paige 471.
[(a)] See Jackson, ex dem. State of New York, v. Clarke, ante, p. 12, n.